43 F.3d 712
 310 U.S.App.D.C. 61
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
DUKE UNIVERSITY, Petitioner/Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner.
 No. 93-1428.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 3, 1994.
 
 Before: SILBERMAN, WILLIAMS, and GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on a petition for review of an order of the National Labor Relations Board and a cross-application for its enforcement, and was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petition for review be denied and the cross-application for enforcement be granted.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing.
 
 ATTACHMENT
 October 26, 1994
 MEMORANDUM
 
 4
 The primary function of Duke University is not patient care. Or so the National Labor Relations Board could find without abusing its "wide discretion" under section 9(b) of the National Labor Relations Act (29 U.S.C. Sec. 159(b)) to determine appropriate units for collective bargaining. See Bentson Contracting Co. v. NLRB, 941 F.2d 1262, 1265 (D.C.Cir.1991) ("The Board has wide discretion in these matters and reviewing courts must generally defer to its judgment that a particular unit is appropriate."); International Union of Elec., Radio & Mach. Workers v. NLRB, 604 F.2d 689, 695 (D.C.Cir.1979) ("Section 9(b) of the Act ... confers upon the Board broad discretion to select appropriate units, and a Board decision is rarely to be disturbed.") (internal quotation marks omitted). We deny Duke's petition for review of the Board's May 26, 1993 order finding Duke guilty of an unlawful refusal to bargain, and we grant the Board's cross-petition for full enforcement of that order; in doing so, we affirm the Board's order of February 28, 1992 declaring the university's full-time bus drivers to be an appropriate bargaining unit.
 
 
 5
 We reject Duke's contention that the Board erred by refusing to apply a mechanical "fifty-percent rule"--under which employees who spend more than half of their time supporting the university's patient care facilities are automatically considered health care workers--to determine whether the bus drivers were subject to the Final Rule on Appropriate Bargaining Units in the Health Care Industry, 29 C.F.R. Sec. 103.30 (1993). Like the Board, we question whether this "rule", which for the most part was applied only to resolve questions of Board jurisdiction that are no longer at issue, see Duke University, 306 NLRB 555, 557 n. 10 (1992), and hasn't been applied for the last nineteen years in any context, even survived as a live principle prior to the board's order of February 28, 1992. We also believe that the Board is correct in finding that to the extent that the rule ever was applied in a context similar to this one (and here we refer to Duke University, 217 NLRB 799 (1975) ("Duke III ")), it was not applied so inflexibly and mechanically as to become the sole focus of the appropriate-unit inquiry. See 306 NLRB at 557-58. In any event, even if the "fifty-percent rule" had survived up to February 28, 1992 and had existed in the inflexible and mechanical form urged by Duke, the Board gave an adequate explanation for its explicit decision not to follow it any longer, 306 NLRB at 556, 558 and n. 12. Cf. Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C.Cir.1970). Although we acknowledge the appeal of bright-line rules and appreciate that they make it easier for regulated parties to conform their conduct to the law, we cannot say the Board abused its discretion by choosing instead a multi-factored analytical method more sensitive to the differences among employers and their workforces. Cf. NLRB v. Bell Aerospace Co., 416 U.S. 267, 294-95 (1974) (observing that because of the many variables arguably relevant to bargaining-unit determinations "[i]t is doubtful whether any generalized standard can be framed which would have more than marginal utility.").
 
 
 6
 Nor do we accept Duke's argument that the university as an institution is an "acute care hospital" as that phrase is defined in the Final Rule. It is well established that we must accord "substantial deference" to an agency's interpretation of its own rule. Lyng v. Payne, 476 U.S. 926, 939 (1986). In the Final Rule, the Board defined a "hospital" (in relevant part) as an "institution which ... is primarily engaged in providing diagnostic services and therapeutic services ... [to] injured, disabled, or sick persons," 29 CFR Sec. 103.30(f)(1) (adopting Medicare Act's definition of same term, 42 U.S.C. Sec. 1395x). Duke concedes that it is a multi-disciplinary institution and that more than 6,000 of its employees and the vast majority of its students are not involved in health care. In light of these facts, we cannot conclude that the Board misinterpreted its rule in concluding that Duke is not an institution that "primarily" provides services to the sick.
 
 
 7
 Duke premises its argument in part upon comments made by the Board indicating an intent to include "amalgam type" facilities within the Final Rule's definition of "acute care hospital," see 53 Fed.Reg. 33,934; 54 Fed.Reg. 16,344. But Duke cites such comments out of context. They establish only that the Board intended to include within the definition acute-care hospitals that also perform other non-acute patient care functions such as long-term nursing care or outpatient services. Nothing in those comments suggests that the Board intended to extend the definition of "acute care hospital" to the non-patient-care operations of a multidisciplinary university simply because the school is home to a large hospital. Indeed, such an interpretation would be quite suspect because it would mean that every employee of Duke--English professor and basketball coach no less than medical technician or nurse--would be required to bargain under the limitations of the Final Rule, even if such an employee had absolutely no connection to patient care.[1]
 
 
 8
 Duke's remaining arguments were never properly raised in the course of the administrative proceedings. We agree with the Board that by failing to seek review of the issue by the Board, Duke has waived its claim that the bus drivers, if not health-care workers, are appropriately represented only by a unit consisting of all university service employees. 306 NLRB at 555 n. 4.
 
 
 9
 Further, neither Duke's request to the Board for review of the initial unit determination nor its March 10, 1993 brief on the unfair labor practice charge ever argued that some health care industry standard other than the Final Rule on Appropriate Bargaining Units (such as the "pragmatic or empirical community of interests" test of Park Manor Health Care Ctr., 305 NLRB 872, 875 n. 16 (1991)) potentially governed these workers. To the extent that Duke maintains that such claims were somehow implicit in its arguments concerning Kirskville College or its discussion of the policies underlying the Final Rule, we can well understand the Board's failing to address them with the precision that the university now demands: as we have said several times before, an administrative agency "cannot be asked to make silk purse responses to sow's ear arguments". City of Vernon v. FERC, 845 F.2d 1042, 1047 (D.C.Cir.1988).
 
 
 10
 We therefore deny Duke's petition for review and grant the Board's cross-petition for enforcement in full.
 
 
 
 [1]
 On a related note, the Board's distinction of its earlier case of Kirksville College of Osteeopathic Medicine, 274 NLRB 794 (1985) (misleadingly cited by Duke only as "Kirksville College "), makes sense. There is a qualitative difference between a combined medical college/health center--where "patient care was interwoven throughout the institution[,] most physicians on the faculty treated patients at the health center, and the medical teaching process took place throughout the entire complex"--and a "multidisciplinary institution" like Duek, where only a fraction of the university's many students, faculty members, and degree-granting programs have any connection to patient care. 306 NLRB at 556